IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL E. ROBINSON and<br>CAROL A. ROBINSON, | No. 08-cv-761 |
| Plaintiffs, | |
| v. | |
| FREIGHTLINER LLC, et al., | |
| Defendant, | |
| v. | |
| WINNEBAGO INDUSTRIES, and<br>MEYER'S RV CENTERS, LLC, | |
| Defendants/<br>Third-Party Plaintiffs, | |
| v. | Hon. John E. Jones III |
| CUMMINS, INC., | |
| Third-Party Defendant. | |

**MEMORANDUM and ORDER**

**March 10, 2010**

**THE BACKGROUND OF THE ORDER IS AS FOLLOWS:**

Currently pending before this Court is Defendant Meyer's RV Centers, LLC's ("Meyers") and Third-Party Defendant Winnebago's ("Winnebago")

1

(collectively, "Defendants") self-styled "Motion in Limine to Exclude Evidence about Non-Warranty-Related Repairs to Plaintiffs' Motor Home." (Doc. 57) (the "Motion"). For the following reasons, the Motion shall be denied.

I. **PROCEDURAL HISTORY/STATEMENT OF FACTS:**

The parties and the Court are intimately and perhaps all too familiar with this case. Accordingly, in an attempt to conserve judicial resources, we shall not endeavor to rehash the procedural history or factual panoply associated therewith. Instead, we shall refer to these items only to the extent that they are relevant to the resolution of the aforementioned motions in limine.

II. **DISCUSSION:**

The instant Motion seeks to exclude evidence that can be classified in the following categories: (i) evidence relating to problems with parts that were successfully repaired on the first attempt; (ii) evidence relating to problems arising *after* the warranty expired; (iii) evidence relating to alleged defects that are covered by a warranty issued by a non-party. We shall address the argument associated with these categories *ad seriatim*.

A. **Evidence Related to Items Repaired on the First Attempt**

The applicable warranty provisions related to the movants in the instant matter are as follows. The Meyers provision states,

2

> I UNDERSTAND THAT [MEYERS] EXPRESSLY DISCLAIM[S] ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND THAT YOU NEITHER ASSUME NOR AUTHORIZE ANY OTHER PERSON TO ASSUME FOR YOU ANY LIABILITY IN CONNECTION WITH THE SALE OF THE VEHICLE.

(Doc. 57, Ex. A ¶ 5). The Winnebago Warranty provision states,

> THE PERFORMANCE OF REPAIRS IS THE EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY OR ANY IMPLIED WARRANTY. ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE APPLICABLE TO THIS VEHICLE ARISING BY WAY OF STATE LAW IS LIMITED IN DURATION TO THE DURATION OF THIS WRITTEN WARRANTY AS HEREINBEFORE OR HEREINAFTER PROVIDED.

(Doc. 57, Ex.B).

Winnebago and Meyers begin their supporting brief by noting that pursuant to a repair-or replace-covenant in an express warranty, defective conditions that were successfully repaired within a reasonable time or that were never presented to the warrantor cannot form the basis of a breach of warranty claim. *Compare Wollums v. Nat'l RV*, 530 F. Supp. 2d 691, 699 (M.D. Pa. 2008) (Conner, J.) *with Chatlos Sys. v. Nat'l Cash Registers Corp.*, 635 F.2d 1081, 1085 (3d Cir. 1980). They claim that, per Plaintiff Paul Robinson's ("Paul Robinson" or "Mr. Robinson") testimony, the followings items were fixed on the first attempt: (i) the battery tray; (ii) ground wires; (iii) the unglued floor; (iv) broken outlets; (v) the

foot panel; (vi) rear camera; (vii) the closet handle; (viii) the fuse box; (ix) the remote key entry; and (x) the toilet bowl. Further Mr. Robinson testified that the dash radio was repaired, but was unable to recall whether it was done so on the first attempt. Accordingly, since there is no evidence that the dash radio experienced further problems, Winnebago and Meyers argue that it should be treated as if it was successfully repaired on the first attempt.

While Defendants are correct in asserting that defective conditions that were successfully repaired within a reasonable time or that were never presented to the warrantor cannot form the basis of, and are therefore irrelevant to, a breach of an *express* warranty claim, the same is not true for an *implied* warranty claim. Indeed, since the warranty of merchantability guarantees that products will operate in a safe condition and "substantially free from defects," *Hornberger v. Gen. Motors. Corp.*, 929 F.Supp. 884, 888 (E.D. Pa. 1996) (quoting 13 Pa.C.S. § 2314(b)(3)), the entire repair history of the vehicle, including the repairs successfully made on the first attempt, are relevant to an *implied* warranty of merchantability claim. *See Hrycay v. Monaco Coach Corp.*, 2008 WL 4560733 * 11 (E.D. Pa. 2008) ( "To the extent that any item was repaired on the first repair attempt, such repair is still relevant under Plaintiffs' implied warranty claim because the implied warranty of merchantability requires that the motor home be substantially free of defects.

Thus, the entire repair history of the motor home is relevant to Plaintiffs' implied warranty claim."). Accordingly, we shall deny the instant Motion to this extent.

## B. Evidence Related to Problems Arising After the Warranty Expiration

Defendants argue that since Winnebago's Limited Warranty provides coverage for 12 month or 15,000 miles, whichever occurs first, (Doc. 57-3, p 17),[1] evidence related to alleged defects occurring after that time frame[2] should be excluded from evidence. Plaintiffs contend that this position ignores the impact of their implied warranty claims and the operation of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA"). Plaintiffs further note that while the basic warranty period is 12 months/15,000 miles, Winnebago also provided a warranty for structural elements of the motor home for a period of 36 months/36,000 miles.[3]

Importantly, the MMWA provides that "implied warranties may be limited

---

[1] This period is referred to as the "Basic Coverage" period or the "Warranty Period." (*See* Doc. 57-3, p. 17).

[2] Since the Robinsons did not drive their motor home more than 15,000 miles within their first year of ownership, the Limited Warranty thus operated until September 17, 2007, one year from the date of purchase.

[3] This provision provides that at the expiration of the Basic Coverage and for the remainder of the period of 36 month or 36,000 miles, whichever occurs first, Winnebago warrants, *inter alia*, structural defects in the motor home. (*See* Doc. 57-3, p. 17).

5

in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty." 15 U.S.C. § 2308(b). As stated above, the Winnebago Warranty bears the following language on its first page: "ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE APPLICABLE TO THIS VEHICLE ARISING BY WAY OF STATE LAW IS LIMITED IN DURATION TO THE DURATION OF THIS WRITTEN WARRANTY AS HEREINBEFORE OR HEREINAFTER PROVIDED." (Doc. 57-3, p. 17) (emphasis in original). This language is certainly prominently displayed on the face of the warranty and unmistakably limits implied warranties to the duration of the express warranties contained therein. Plaintiffs do not contend that the limitation is unconscionable. Accordingly, we are of the opinion that Winnebago's temporal limitation on its implied warranty obligations does no violence to the MMWA. Consequently, we will give effect to both the 12 month/ 15,000 mile warranty and the 36 month/36,000 mile warranty. Therefore, we shall deny the instant Motion to the extent that Plaintiffs shall be permitted to introduce evidence related to defects occurring after the expiration of the basic 12 month/15,000 mile warranty only to the extent that they are covered by the 36

month/ 36,000 warranty.[4]

## C. Evidence Related to Alleged Defects Covered by a Warranty Issued by a Non-Party

Winnebago avers that its warranty excluded from coverage any "part of component covered by a written warranty issued by its manufacturer." (Doc. 57-3, p. 17). It claims that if Plaintiffs experienced problems with these parts, which included, *inter alia*, the heat pump, inverter, microwave, and toilet, their proper recourse was to seek relief from the appropriate manufacturer, not Winnebago. On the other hand, Plaintiffs assert that even if a specific component was expressly warranted by an outside manufacturer, it is covered by Winnebago's implied warranty of merchantability because Winnebago is a "merchant with respect to goods of that kind." They contend that the MMWA prevents Winnebago from disclaiming non-party warranties. Further, the Robinsons claim that the repair of items warranted by non-parties is relevant to their implied warranty claims, since the implied warranty of merchantability requires that their motor home be "substantially free of defects."

As noted in our September 28, 2009 Order, there must be an underlying

---

[4] We realize that Defendants maintain that most, if not all, of the alleged defects relate to the basic 12 month/15,000 mile warranty. To the extent that this is true, Plaintiffs shall not be permitted to introduce evidence of defects occurring outside the Basic Coverage Period.

state law breach of implied warranty in order to support an MMWA cause of action sounding in the same. *See In re Toshiba America HD DVD Marketing and Sales Practices Litigation*, 2009 WL 2940081 *15-18 (D. N.J. 2009) ("Because . . . the Plaintiffs have failed to state a claim for breach of implied or express warranties, they have also failed to state a claim for breach of the MMWA"); *HRL Land or Sea Yachts v. Travel Supreme, Inc.*, - - F.Supp. 2d - -, 2009 WL 427375 (W.D. Mich. 2009) ("[T]o be sure, a plaintiff's implied warranty claim brought under the [MMWA] rests on the applicable state law, an [MMWA] implied warranty claim is only successful if the plaintiff would be able to assert a valid implied warranty claim under state law.").

To this end, we note that in Pennsylvania an implied warranty of merchantability arises by operation of law and serves to protect buyers from loss where the goods purchased are below commercial standards." *Hornberger v. Gen. Motors Corp.*, 929 F.Supp., at 887-88 (E.D. Pa. 1996) (citing *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1005 (3d Cir. 1992)). Indeed, in the Commonwealth of Pennsylvania, "[A] warranty that the goods shall be merchantable is implied in a contract for their sale *if* the seller is a merchant with

respect to goods of that kind." *Hrycay*, at * 11 (emphasis added).[5] Nonetheless, an implied warranty may be disclaimed or modified. *See* 13 Pa. C.S. § 2316(b) ("[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous."). However, the MMWA would operate to prevent a warrantor from disclaiming the implied warranty of merchantability with respect to items that it expressly warrants.

Winnebago relies on *HRL Land or Sea Yachts v. Travel Supreme, Inc.*, - - F.Supp. 2d - -, 2009 WL 427375 (W.D. Mich. 2009), for the proposition that the MMWA does not prohibit a motor home dealer from making certain express warranties as to certain motor home components while simultaneously disclaiming implied warranties for the motor home itself. *See id.* * 7 (The "distinction between warranties covering a larger consumer product, the RV, and warranties covering isolated consumer products, like batteries or tiers [*sic*], which are part of the larger consumer product, is entirely consistent with the purpose of the MMWA.").

However, a review of *HRL* indicates that the court determined that a motor

---

[5] A "merchant" is defined as a person who deals in goods of the kind, or one who otherwise holds himself out as having knowledge or skill peculiar to the goods involved. *See* 13 Pa. C.S. § 2104.

9

home dealer could not be held liable for breaching the implied warranty of merchantability with respect to the vehicle as a whole because it *effectively disclaimed the implied warranty of merchantability in the first instance*, and because the MMWA did not prevent the same since its express warranties, if any, only covered specific components, and not the vehicle as a whole. *See generally id.* The case at bar would be distinguishable if we determined that Winnebago was subject to the implied warranty of merchantability with regard to the specific components warranted by outside manufacturers and that it *had not* effectively disclaimed the same. In such a case, the language cited by Winnebago would only be effective in disclaiming any *express* warranties as to the specific components; Winnebago, as a "merchant," would still be bound by the warranty of merchantability as to these items, *see Hrycay*, * 11 ("[Defendant] argues that its Limited Warranty excludes from its coverage various items covered by other manufacturer's warranties. Therefore, [Defendant] contends that this Court should have limited Plaintiffs' evidence to conditions warranted by [Defendant] . . . . Plaintiffs respond that their breach of warranty claims are based on both express and implied warranties. Plaintiffs argue that, when determining if the implied warranty of merchantability has been impaired, all repairs are relevant. This Court agrees with Plaintiffs' assertion.).

Accordingly, we must first determine whether the implied warranty of merchantability arose as a matter of law with respect to the items warranted by outside manufacturers. We must then assess whether, as a matter of law, Winnebago effectively disclaimed or limited that warranty with regard to the same. Unfortunately, these issues have been insufficiently briefed by the parties.[6] To that extent, we must admit with all candor that we simply do not have enough information, factual or legal, before us to properly dispose of this issue. Accordingly, we will deny the instant Motion to this extent without prejudice. However, in lieu of filing a second motion in limine, we shall allow Winnebago to present its argument to the Court through a motion of summary judgment, if it so chooses.[7]

## III. CONCLUSION

For the foregoing reasons, the instant Motion shall be denied in its entirety. We do note that in their opposition brief Plaintiffs raise an issue related to Meyers' purported liability for breach of express and implied warranties. Defendants deny

---

[6] Plaintiffs assert that Winnebago is a "merchant" as to the components warranted by outside manufacturers, but provides no factual or legal support therefor.

[7] We realize that the time in which to file dispositive motions has long since passed. However, since the above-captioned case is not currently on a trial term, we do not believe that affording Winnebago this opportunity will prejudice the parties in an appreciable or way will be unduly delay the litigation of this case.

11

such liability in their reply brief. In part because we believe that a more thorough discussion of this issue would aid in its resolution, we are of the opinion that the mechanism outlined in Federal Rule of Civil Procedure 56 provides the most efficient avenue for resolving the same.[8] Accordingly, we will deny the instant Motion to this extent without prejudice to recast this argument in a summary judgment motion.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Winnebago's Motion in Limine To Exclude Evidence About Non-Warranty-Related Repairs to Plaintiffs' Motor Home (Doc. 57) is **DENIED** in its entirety.

2. Winnebago may recast its argument involving evidence related to items covered by non-party warranties in a motion in limine or in a motion for summary judgment. If Winnebago files a summary judgment motion, it may also address issues related to Meyer's Warranty liability.[9]

---

[8] "[J]udgment . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

[9] If Winnebago elects to file a motion for summary judgment to this extent, we presume it will limit the scope of the motion to these two issues.

12

/s/ John E. Jones III
John E. Jones III
United States District Judge