IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL E. ROBINSON and<br>CAROL A. ROBINSON, | : | No. 08-cv-761 |
| Plaintiffs, | : | |
| v. | : | |
| FREIGHTLINER LLC, et al., | : | |
| Defendant, | : | |
| v. | : | |
| WINNEBAGO INDUSTRIES, and<br>MEYER'S RV CENTERS, LLC, | : | |
| Defendants/<br>Third-Party Plaintiffs, | : | |
| v. | : | Hon. John E. Jones III |
| CUMMINS, INC., | : | |
| Third-Party Defendant. | : | |

## MEMORANDUM and ORDER

## March 10, 2010

## THE BACKGROUND OF THE ORDER IS AS FOLLOWS:

Currently pending before the Court is Plaintiffs Paul E. and Carol A.

Robinsons' ("Plaintiffs" or "the Robinsons") Motion for Reconsideration of our

1

September 28, 2009 Order, (Doc. 73), in which we resolved Defendant Freightliner's ("Freightliner") Motion for Summary Judgment, (Doc. 37) (the "MSJ"), Third-Party Plaintiff Cummins, Inc.'s ("Cummins") Motion to Join in the MSJ, (Doc. 38), and a Motion for Partial Summary Judgment filed by Third Party Defendants Winnebago Industries ("Winnebago") and Meyer's RV Centers ("Meyers"), (Doc. 46). (Doc. 76) (the "Motion"). For the reasons that follow we will grant the Motion.

I. **PROCEDURAL HISTORY:**

On March 18, 2008, Plaintiffs Paul E. and Carol A Robinson ("Plaintiffs" or "the Robinsons") initiated the instant litigation by filing a complaint against Defendants Freightliner, Winnebago, Meyers, and Allison Transmissions ("Allison") in the Court of Common Pleas in Franklin County, Pennsylvania. (Doc. 1 Ex. A).[1] On April 24, 3008, Winnebago removed the action to this Court. (Doc. 1). In their answers to the complaint, Winnebago and Meyers asserted cross-claims against Freightliner and Allison. (Docs. 2, 4).[2] On May 2, 2008,

---

[1] The complaint lodges four claims against all Defendants: (I) Count I–violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (the "MMWA"); (ii) Count II–breach of warranty; (iii) Count III–violation of the Pennsylvania Unfair Trade Practice and Consumer Protection Law, 73 P.S. § 201 *et seq.* (the "UTPCPL"); and (iv) Count IV–revocation of acceptance. (*See* Rec. Doc. 1).

[2] Allison was subsequently dismissed from this action via the stipulation filed on January 12, 2009. (Rec. Doc. 42).

2

Winnebago and Meyers lodged Third-Party complaints against Cummins. (Doc. 7).

On January 2, 2009, Freightliner filed the MSJ and a brief in support thereof, (Doc. 37).[3] Cummins filed its Motion to Join in the same on January 6, 2009. (Doc. 38). On January 21, 2009, Winnebago filed a Partial MSJ. (Doc. 46). We resolved these motions by way of our September 28, 2009 Memorandum and Order. (Doc. 73). Plaintiffs filed the instant Motion, and a brief in support thereof, on October 8, 2009. (Docs. 76, 77). Opposition briefs were filed by Freightliner on October 23, 2009, (Doc. 79), Cummins on October 26, 2009, (Doc. 80), and Winnebago on October 28, 2009, (Doc. 81). Plaintiffs have not filed a reply brief, and the time in which to do so has long since expired. Accordingly, the instant Motion is ripe for review.

## II. STANDARD OF REVIEW:

The purpose of a Rule 59(e) motion is "to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986)). "Accordingly, a

---

[3] Cummins filed its Motion to Join in the same and a brief in support thereof on January 6, 2009, (Rec. Docs. 38, 39). Although the Plaintiffs did not concur, they failed to file a brief in opposition thereto.

3

judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (I) an intervening change in the controlling law; (ii) the availability of new evidence that was not available when the court ruled on the previous motion; or (iii) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* (Citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

"Reconsideration of judgment is an extraordinary remedy; therefore, such motions are to be granted sparingly." *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999). A motion for reconsideration is appropriate in instances when the court "has made an error not of reasoning, but of apprehension," and a court "must not grant reconsideration when the motion is simply a re-styling or rehashing of issues previously presented." *Pahler v. City of Wilkes-Barre*, 207 F. Supp. 2d 341, 355 (M.D. Pa. 2001) (internal citations omitted). "Mere disagreement with the court is a ground for appeal, not a motion for reconsideration." *Id.* (quoting *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996)). Further, motions for reconsideration cannot be used by a party to re-litigate or rehash legal principles and arguments already presented to and rejected by the court, nor may they present additional arguments which could or should have been raised before judgment was

entered. *See Bhatnagar v. Surrenda Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995) (for the proposition that motions for reconsideration cannot be used to gain a "second bite" at the apple).

III. **STATEMENT OF FACTS:**[4]

On September 17, 2006, Plaintiffs purchased a new 2007 Winnebago Itasca Ellipse motor home ("the vehicle") from Meyers for $248, 678. (Doc. 1-2 ¶ 11; Docs. 37, 44 ¶ 5). Although the vehicle was manufactured by Winnebago, it was equipped with a body and non-chassis components manufactured by Winnebago and Meyers, with a chassis manufactured by Freightliner, and with transmission and related components jointly manufactured by Meyers and Allison. (Doc 1-2 ¶¶ 7-10).

Freightliner provided an "Owner's Warranty Information for North America" (the "Owner's Warranty"), which states, *inter alia*, "Warranty coverage includes all factory-installed components of the vehicle/chassis that are not excluded elsewhere in the warranty or by special agreement or described as having a different time, distance, or hours."[5] (Doc. 37 Ex. F). Contained in the Owner's

---

[4] The factual recitation contained herein is taken entirely from our September 28, 2009 Memorandum and Order, (Doc. 73).

[5] The Owner's Warranty also specifically notes, "The engine, including all of its components as supplied by the manufacturer, are not covered under this Warranty, but is warranted separately by the manufacturer of the engine. For engine warranty or service, contact

5

Warranty was a "2007 New Vehicle Limited Warranty" (the "New Vehicle Warranty") that provided:

> Freightliner warrants that each new vehicle will be free from defects in material and workmanship that occur under normal use . . . subject to certain limitations and exclusions as specified in this document. This Warranty covers all components and parts unless specifically covered by other warranties or otherwise excluded by this document.

(*Id.*). The "Limitations" section stated, "This warranty does not apply to engines,[6] Allison Transmissions, tires, or other components or parts that are not manufactured by [Freightliner] and that are warranted directly by their respective manufacturers." (*Id.*).

The warranty further established that "[Freightliner's] sole obligation under this warranty shall be to repair or replace, at [Freightliner's] discretion, any defective component or part." (*Id.*). It further provided:

> Any part of the vehicle subject to warranty that is found to be defective in material or workmanship under normal use and maintenance will be repaired or replaced at Winnebago's option without charge to the customer for parts or labor upon notice of the defect.

---

the engine manufacturer's authorized sales and service facility." (Doc. 37 Ex. F). The Warranty also excludes consumable parts such as brake linings. (*Id.*).

Further, the provision entitled "Purchaser's Exclusive Remedy" states, "This Warranty shall be the Purchaser's sole and exclusive remedy against [Freightliner], whether in contract, under statute . . . , warranty, tort, strict liability, or any other legal theory." (*Id.*).

[6] "Engine" is defined as the engine itself and all other components related thereto and supplied by the engine manufacturer. (*Id.*).

(Doc. 37 Ex. D). This warranty did not cover "[chassis, drive train and related components" or "[a]ny other part or component covered by a written warranty issued by its manufacturer." *Id.* The document goes on to establish that "Purchaser must, at Purchaser's expense, promptly return the vehicle to an authorized Dealer for inspection and repair or replacement of any defect in material or workmanship." (*Id.*).

Finally, Cummins provided a warranty applicable "to new electronic diesel engines sold by Cummins" that "covers any failures of the engine which result, under normal use and service, from a defect in material or factory workmanship . . . ." (Doc. 37 Ex. G).

Plaintiffs delivered the vehicle to Meyers for repairs on December 14, 2006, at which time Meyers addressed various components covered by the Winnebago Warranty. (Docs. 37, 44 ¶ 17, 18).[7] Subsequent to this initial round of repairs, Plaintiffs were forced to seek repairs to Winnebago related items on the following dates and locations: March 5, 2007 at Grumbines RV Center ("Grumbines"), a sister store of Meyers and authorized Winnebago dealer;[8] May 3, 2007 at Meyers;[9]

---

[7] This included the power line gauge, inverter gauge, central vacuum system, wind sensor, base board heating, stove cover, LP tank, top battery tray, dash board heat, ground wires in the outside electrical compartment, the heat pump, and the leveling jacks. (Docs. 37, 44 ¶ 18).

[8] Grumbines addressed items related to the "Sirius radio, molding at the refrigerator, floor paneling raising, vacuum sweeper, bathroom outlet, front DVD player, sliding door, driver's side

7

May 7, 2007 again at Meyers;[10] June 6, July 26, and September 7, 2007 at Tom Schaffer's Camping and Travel Center.[11] Plaintiffs concede that issues covered by the Freightliner Warranty were not addressed during any of these repair sessions. (*See* Docs. 37, 44 ¶¶ 17-25).

On November 11 and December 29, 2008, Plaintiffs delivered the vehicle to Freightliner of Hagerstown ("FOH") for repairs on a failed turbo charger and to remedy a harmonic driveline noise. FOH could not remedy the noise and suggested that Plaintiffs have the vehicle tested by a dynamometer, at their expense, and if it demonstrated a problem with a Freightliner component, then Freightliner would pay for the repair. (Doc. 44 Exs. C, D).

With regard to engine problems, Plaintiffs complained about the issues that follow. On March 2, 2007, Plaintiffs noticed a "rumble noise or vibration when letting off the accelerator at low speeds," a short circuited accelerator, and a

---

left foot pedal, toilet paper holder, right front slide rubber seal, vacuum pump and left turn signal." (Doc. 37 Ex. J).

[9] Meyers addressed issues with the "electrical outlets, awning switch beeping noise, rear closet door slider, vacuum pump, clicking relay, leveling jacks, heat pump, fuse box, day/night shades, roof scratch and an entry door remote." (Doc. 37 Ex. K).

[10] Meyers serviced the inverter and sliding door handle. (Doc. 37 Ex. L).

[11] Issues addressed include "the external radio/DVD, Dirt Devil central vacuum system, awning, toilet, air conditioner, DVD, shower door rubber strip and shower head . . . [and] house batteries and shower door." (Doc. Ex. M).

8

defective fuel tank/fuel gauge, all for which they took the vehicle to Orlando Freightliner for repair, (Doc. 37 at Ex. O). Plaintiffs maintain that no repairs were aimed to rectify the "rumble" noise at that time. (*Id.*). Plaintiffs returned to FOH on April 2, 2007. (*Id.*).[12] Plaintiffs went to Truck Enterprises Hagerstown ("TE")[13] on May 23, 2007 and to FOH on September 4 and December 12, 2007 and on January 7 and February 5, 2008 for the vibration/rumble noise. (*See id.* Exs. Q-T).

Upon Freightliner's suggestion, Plaintiffs ultimately delivered the vehicle to its Gaffney, South Carolina facility for further diagnosis. At that time, Freightliner identified the problem as a broken wire underneath the engine cover in the Cummins diesel engine. (Doc. 37 Ex. V). Plaintiffs acknowledge that the repair to the wire in the Cummins engine rectified the vibration/rumble noise, which has not since returned. (Docs. 37, 44 ¶¶ 33, 34).

In addition to the vibration/rumble noise, Plaintiffs aver that they complained to Freightliner about the following conditions at various times throughout their ownership of the vehicle: (i) dimmed lights (Doc. 37, Ex. O); (ii)

---

[12] Plaintiffs aver that during this 22 day repair visit, FOH misdiagnosed the problem as an incorrectly routed air tube, hose, and exhaust. (*Id.* Ex. P). Plaintiffs also complained of the defective fuel gauge at this time. Cummins' representatives were in contact with FOH while the vehicle was in its temporary custody. Paul E. Robinson Dep. 177:18-178:4.

[13] TE is an authorized Allison dealership. (Docs.37, 44 ¶ 30). Plaintiffs claim that they delivered the vehicle to TE because FOH informed them on two occasions that the vibration and rumble noise were caused by the vehicle's Allison transmission. (*Id.* Ex. Q).

fuel sending unit failed to register (*Id.* Ex. P); (iii) check engine light malfunctioning (*Id.* Ex. R); (iv) broken heat shield (*Id.*); (v) strong odor of burnt oil (*Id.*); (vi) a broken clamp for the air intake (*Id.*); (vii) front end clunking noise (*Id.* Ex. S); (viii) broken protectant shield (*Id.* Ex. T); (ix) a harmonic driveline noise; and (x) a failed turbo charger.

In our September 28, 2009 Memorandum and Order, we granted Freightliner's summary judgment motion with respect to Plaintiffs' implied warranty of merchantability and revocation claims. The instant Motion seeks reconsideration of these determinations. The Motion also seeks clarification of the scope of our Order. We address these issues below.

## IV. DISCUSSION:

### A. Implied Warranty of Merchantability

As we noted in our September 28, 2009 Order, the implied warranty of merchantability mandates that the purchased goods shall be "merchantable . . . if the seller is a merchant with respect to goods of that kind." 13 Pa.C.S. § 2314(a). To be merchantable, goods need not be of the *best* quality, *Gall v. Allegheny County Health Dept.*, 555 A.2d 986 (Pa. 1989), they "need only be of reasonable quality within expected variations and 'fit for the ordinary purposes for which they are used,'" *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 888 (E.D. Pa.

1996) (quoting 13 Pa. C.S.§ 2314(b)(3)).[14] In our September 28, 2009 Order, we noted that the components warranted by Freightliner, the chassis and all ancillary components, were integrated with the Cummins engine and then supplied to Winnebago for completion of the body/living area. Pl.'s Opp. Br. p. 10. Accordingly, we concluded that the Freightliner components at issue were designed to support the living area and facilitate the mobility of the vehicle. Because Plaintiffs traveled approximately 20,000 miles in the vehicle since first complaining of the aforementioned defects, and approximately 5,000 miles since filing their complaint, we held that any defects in the chassis and ancillary components were *not substantial* because the purposes for which it was designed, transportation and living, were not impaired, at least not with regard to any components warranted by Freightliner. (Doc. 73, p.23-24).

After reconsidering this determination, we believe that in its formulation we may have overstepped our bounds by delving into issues that are squarely the province of the jury. While we were initially of the opinion, as evidenced in our September 28, 2009 Order, that the defects allegedly riddling the Plaintiffs' motor home were not "substantial" enough to support a breach of merchantability claim,

---

[14] In being "fit" for the purposes for which it was designed, a product should be "free from *substantial* defects." *Gall*, at 789 (emphasis added).

11

further reflection and consideration of Plaintiffs' position leads us to the conclusion that the existence of the defects themselves *could* lead a reasonable jury to conclude that the motor home in question was not free of *substantial* defects. In other words, we believe that the extent or pervasiveness of any defects is better left for the jury to determine. Indeed, *Hittle v. Scripto-Tokai Corp.*, 166 F.Supp.2d 142, 157 (M.D. Pa. 2001), supports this conclusion. *See Hittle*, 166 F.Supp.2d 142, 157 (M.D. Pa. 2001) (citing *Kriscuinas v. Union Underwear Co.*, 1994 WL 523046 *6 (E.D. Pa. 1994)) ("Whether a product is merchantable is a question of fact for the jury."). Accordingly, we shall grant the Motion to this extent.

### B. Revocation

Pennsylvania's provision on revocation of acceptances states, in pertinent part:

> **(a) Grounds for revocation.** – The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it: (1) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured;
>
> * * * * *
>
> **(b) Time and notice of revocation.** – Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and *before any substantial change in*

*condition of the goods which is not caused by their own defects.* It is not effective until the buyer notifies the seller of it.

**(c) Rights and duties of revoking buyer.** – A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

13 Pa. C.S. § 2608 (emphasis added). In our September 28, 2009 Order, we dismissed Plaintiffs' revocation claim because they drove the vehicle approximately 20,000 miles in the 18 month time frame ranging from the date of purchase to the date they initiated the case *sub judice* and therefore *substantially changed* the condition of the goods in ways that were not caused by the alleged defects themselves.

Plaintiffs base their request for reconsideration of our dismissal of their revocation claim on the theory that we misinterpreted the legislative intent behind the phrase "substantial change in condition." This argument appears for the first time in Plaintiffs' briefs related to the instant Motion. While this may constitute a technical violation of the motion for reconsideration standard, we believe that justice dictates we address the merits of Plaintiffs' argument.[15]

Plaintiffs cite *Global Ground Support, LLC v. Glazer Enterprises, Inc.*, 2008

---

[15] To be sure, Plaintiffs have walked this case right up to the line which, upon crossing, would have precluded reconsideration. The authority Plaintiffs cite is not intervening, and thus should have been raised previously. It is, however, sufficiently compelling that to deny reconsideration would be manifestly unjust.

WL 4425441 (E.D. Pa. 2008) (construing a North Carolina statute extremely similar to 13 Pa.C.S. § 2608 ), in support of its contention that the "substantial change in condition" language refers to changes that cause or exacerbate alleged defects. Indeed, like 13 Pa. C.S. § 2608, the statute in question, N.C. Gen. Stat. 25-2-608(2), states, "Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it." N.C. Gen. Stat. 25-2-608(2). Citing North Carolina law, the Eastern District of Pennsylvania recognized, "This provision protects sellers in situations where buyers allow the goods to deteriorate, creating the risk that the alleged defect was caused or aggravated by the buyers' action or inaction." *Glazer*, * 4 (citing *Roy Burt Enter. Inc. v. Marsh*, 400 S.E. 2d 425, 427 (N.C. 1991)). It further noted that the provision "does not preclude revocation of goods that are defective before change occurs." *Id.* (citing *Warren v. Guttanit, Inc.*, 317 S.E. 2d 5, 10-11 (N.C. Ct. App. 1984)).

Given the fact that N.C. Gen Stat 25-2-608(2) is identical to 13 Pa. C. S. § 2608, we find *Glazer* highly persuasive. Under the analysis set forth therein, the Robinsons' extensive use of their motor home would not constitute "substantial

change" thereto so long as it did not create new defects or exacerbate pre-existing defects. We believe that these determinations are factual issues that fall squarely within the province of the jury. Accordingly, in light of the newly discovered persuasive authority contained in *Glazer*, we shall grant the instant Motion with regard to Plaintiffs' revocation claim.

### C. Request for Clarification

Plaintiffs seek clarification as to whether our September 28, 2009 Order dismissed its implied warranty and revocation claims against Cummins. Quite directly, it did not. That Memorandum and Order only discussed Plaintiffs' claims against Freightliner, Winnebago, and Meyers. Indeed, we could not have dismissed Plaintiffs' claims against Cummins at that time because we only recently put our imprimatur on them through our denial of Cummins' motion to strike the same. Accordingly, the litigation of those claims is in its early stages, and they remain susceptible to all appropriate pre-trial motions, as may be filed.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' Motion to Reconsider (Doc. 76) is **GRANTED**.

2. Counts I and II of the complaint are **REINSTATED** to the extent that they are based on the implied warranty of merchantability. Count IV is **REINSTATED** in its entirety.

<u>John E. Jones III</u>
John E. Jones III
United States District Judge