IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL E. ROBINSON and<br>CAROL A. ROBINSON, | : | No. 08-cv-761 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| FREIGHTLINER LLC, et al., | : | |
| | : | |
| Defendant, | : | |
| | : | |
| v. | : | |
| | : | |
| WINNEBAGO INDUSTRIES, and<br>MEYER'S RV CENTERS, LLC, | : | |
| | : | |
| Defendants/<br>Third-Party Plaintiffs, | : | |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| CUMMINS, INC., | : | |
| | : | |
| Third-Party Defendant. | : | |

## MEMORANDUM and ORDER

### March 10, 2010

### THE BACKGROUND OF THE ORDER IS AS FOLLOWS:

Currently pending before the Court is Defendant Freightliner LLC's

("Freightliner") Motion for Reconsideration of our September 28, 2009 Order,

(Doc. 73), in which we resolved Freightliner's Motion for Summary Judgment, (Doc. 37) (the "MSJ"), Third-Party Plaintiff Cummins, Inc.'s ("Cummins") Motion to Join in the MSJ, (Doc. 38), and a Motion for Partial Summary Judgment filed by Third Party Defendants Winnebago Industries ("Winnebago") and Meyer's RV Centers ("Meyers"), (Doc. 46). (Doc. 78) (the "Motion"). For the reasons that follow we will deny the Motion.

## I.    PROCEDURAL HISTORY:

On March 18, 2008, Plaintiffs Paul E. and Carol A Robinson ("Plaintiffs" or "the Robinsons") initiated the instant litigation by filing a complaint against Defendants Freightliner, Winnebago, Meyers, and Allison Transmissions ("Allison") in the Court of Common Pleas in Franklin County, Pennsylvania. (Doc. 1 Ex. A).[1] On April 24, 3008, Winnebago removed the action to this Court. (Doc. 1). In their answers to the complaint, Winnebago and Meyers asserted cross-claims against Freightliner and Allison. (Docs. 2, 4).[2] On May 2, 2008, Winnebago and Meyers lodged Third-Party complaints against Cummins. (Doc.

---

[1] The complaint lodges four claims against all Defendants: (i) Count I–violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (the "MMWA"); (ii) Count II–breach of warranty; (iii) Count III–violation of the Pennsylvania Unfair Trade Practice and Consumer Protection Law, 73 P.S. § 201 *et seq.* (the "UTPCPL"); and (iv) Count IV–revocation of acceptance. (*See* Rec. Doc. 1).

[2] Allison was subsequently dismissed from this action via the stipulation filed on January 12, 2009. (Rec. Doc. 42).

7).

On January 2, 2009, Freightliner filed the MSJ and a brief in support

thereof, (Doc. 37).[3] Cummins filed its Motion to Join in the same on January 6,

2009. (Doc. 38). On January 21, 2009, Winnebago filed a Partial MSJ. (Doc. 46).

We resolved these motions by way of our September 28, 2009 Memorandum and

Order. (Doc. 73). Freightliner filed the instant Motion, and a brief in support

thereof, on October 13, 2009. (Doc. 78). Plaintiffs filed an opposition brief on

October 28, 2009. (Doc. 82). Freightliner's reply brief was lodged on November

12, 2009. (Doc. 83). Accordingly, the instant Motion is ripe for review.

## II.   STANDARD OF REVIEW:

The purpose of a Rule 59(e) motion is "to correct manifest errors of law or

fact or to present newly discovered evidence." *Max's Seafood Café v. Quinteros*,

176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp v. Zlotnicki*, 779 F.2d

906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986)). "Accordingly, a

judgment may be altered or amended if the party seeking reconsideration shows at

least one of the following grounds: (I) an intervening change in the controlling

law; (ii) the availability of new evidence that was not available when the court

---

[3] Cummins filed its Motion to Join in the same and a brief in support thereof on January 6, 2009, (Rec. Docs. 38, 39). Although the Plaintiffs did not concur, they failed to file a brief in opposition thereto.

ruled on the previous motion; or (iii) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* (Citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

"Reconsideration of judgment is an extraordinary remedy; therefore, such motions are to be granted sparingly." *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999). A motion for reconsideration is appropriate in instances when the court "has made an error not of reasoning, but of apprehension," and a court "must not grant reconsideration when the motion is simply a re-styling or rehashing of issues previously presented." *Pahler v. City of Wilkes-Barre*, 207 F. Supp. 2d 341, 355 (M.D. Pa. 2001) (internal citations omitted). "Mere disagreement with the court is a ground for appeal, not a motion for reconsideration." *Id.* (quoting *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996)). Further, motions for reconsideration cannot be used by a party to re-litigate or rehash legal principles and arguments already presented to and rejected by the court, nor may they present additional arguments which could or should have been raised before judgment was entered. *See Bhatnagar v. Surrenda Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995) (for the proposition that motions for reconsideration cannot be used to gain a "second bite" at the apple).

## III.  STATEMENT OF FACTS:[4]

On September 17, 2006, Plaintiffs purchased a new 2007 Winnebago Itasca Ellipse motor home ("the vehicle") from Meyers for $248,678.  (Doc. 1-2 ¶ 11; Docs. 37, 44 ¶ 5).  Although the vehicle was manufactured by Winnebago, it was equipped with a body and non-chassis components manufactured by Winnebago and Meyers, with a chassis manufactured by Freightliner, and with transmission and related components jointly manufactured by Meyers and Allison. (Doc 1-2 ¶¶ 7-10).

Freightliner provided an "Owner's Warranty Information for North America" (the "Owner's Warranty"), which states, *inter alia*, "Warranty coverage includes all factory-installed components of the vehicle/chassis that are not excluded elsewhere in the warranty or by special agreement or described as having a different time, distance, or hours."[5] (Doc. 37 Ex. F).  Contained in the Owner's Warranty was a "2007 New Vehicle Limited Warranty" (the "New Vehicle

---

[4] The factual recitation contained herein is taken entirely from our September 28, 2009 Memorandum and Order, (Doc. 73).

[5] The Owner's Warranty also specifically notes, "The engine, including all of its components as supplied by the manufacturer, are not covered under this Warranty, but is warranted separately by the manufacturer of the engine. For engine warranty or service, contact the engine manufacturer's authorized sales and service facility." (Doc. 37 Ex. F).  The Warranty also excludes consumable parts such as brake linings. (*Id.*).

Further, the provision entitled "Purchaser's Exclusive Remedy" states, "This Warranty shall be the Purchaser's sole and exclusive remedy against [Freightliner], whether in contract, under statute . . . , warranty, tort, strict liability, or any other legal theory." (*Id.*).

Warranty") that provided:

> Freightliner warrants that each new vehicle will be free from defects in material and workmanship that occur under normal use . . . subject to certain limitations and exclusions as specified in this document. This Warranty covers all components and parts unless specifically covered by other warranties or otherwise excluded by this document.

(*Id.*). The "Limitations" section stated, "This warranty does not apply to engines,[6] Allison Transmissions, tires, or other components or parts that are not manufactured by [Freightliner] and that are warranted directly by their respective manufacturers." (*Id.*).

The warranty further established that "[Freightliner's] sole obligation under this warranty shall be to repair or replace, at [Freightliner's] discretion, any defective component or part." (*Id.*). It further provided:

> Any part of the vehicle subject to warranty that is found to be defective in material or workmanship under normal use and maintenance will be repaired or replaced at Winnebago's option without charge to the customer for parts or labor upon notice of the defect.

(Doc. 37 Ex. D). This warranty did not cover "[chassis, drive train and related components" or "[a]ny other part or component covered by a written warranty issued by its manufacturer." *Id.* The document goes on to establish that "Purchaser must, at Purchaser's expense, promptly return the vehicle to an authorized Dealer

---

[6] "Engine" is defined as the engine itself and all other components related thereto and supplied by the engine manufacturer. (*Id.*).

for inspection and repair or replacement of any defect in material or workmanship." (*Id.*).

Finally, Cummins provided a warranty applicable "to new electronic diesel engines sold by Cummins" that "covers any failures of the engine which result, under normal use and service, from a defect in material or factory workmanship . . . ." (Doc. 37 Ex. G).

Plaintiffs delivered the vehicle to Meyers for repairs on December 14, 2006, at which time Meyers addressed various components covered by the Winnebago Warranty. (Docs. 37, 44 ¶ 17, 18).[7] Subsequent to this initial round of repairs, Plaintiffs were forced to seek repairs to Winnebago related items on the following dates and locations: March 5, 2007 at Grumbines RV Center ("Grumbines"), a sister store of Meyers and authorized Winnebago dealer;[8] May 3, 2007 at Meyers;[9]

---

[7] This included the power line gauge, inverter gauge, central vacuum system, wind sensor, base board heating, stove cover, LP tank, top battery tray, dash board heat, ground wires in the outside electrical compartment, the heat pump, and the leveling jacks. (Docs. 37, 44 ¶ 18).

[8] Grumbines addressed items related to the "Sirius radio, molding at the refrigerator, floor paneling raising, vacuum sweeper, bathroom outlet, front DVD player, sliding door, driver's side left foot pedal, toilet paper holder, right front slide rubber seal, vacuum pump and left turn signal." (Doc. 37 Ex. J).

[9] Meyers addressed issues with the "electrical outlets, awning switch beeping noise, rear closet door slider, vacuum pump, clicking relay, leveling jacks, heat pump, fuse box, day/night shades, roof scratch and an entry door remote." (Doc. 37 Ex. K).

May 7, 2007 again at Meyers;[10] June 6, July 26, and September 7, 2007 at Tom Schaffer's Camping and Travel Center.[11] Plaintiffs concede that issues covered by the Freightliner Warranty were not addressed during any of these repair sessions. (*See* Docs. 37, 44 ¶¶ 17-25).

On November 11 and December 29, 2008, Plaintiffs delivered the vehicle to Freightliner of Hagerstown ("FOH") for repairs on a failed turbo charger and to remedy a harmonic driveline noise. FOH could not remedy the noise and suggested that Plaintiffs have the vehicle tested by a dynamometer, at their expense, and if it demonstrated a problem with a Freightliner component, then Freightliner would pay for the repair. (Doc. 44 Exs. C, D).

With regard to engine problems, Plaintiffs complained about the issues that follow. On March 2, 2007, Plaintiffs noticed a "rumble noise or vibration when letting off the accelerator at low speeds," a short circuited accelerator, and a defective fuel tank/fuel gauge, all for which they took the vehicle to Orlando Freightliner for repair, (Doc. 37 at Ex. O). Plaintiffs maintain that no repairs were aimed to rectify the "rumble" noise at that time. (*Id.*). Plaintiffs returned to FOH

---

[10] Meyers serviced the inverter and sliding door handle. (Doc. 37 Ex. L).

[11] Issues addressed include "the external radio/DVD, Dirt Devil central vacuum system, awning, toilet, air conditioner, DVD, shower door rubber strip and shower head . . . [and] house batteries and shower door." (Doc. Ex. M).

on April 2, 2007. (*Id.*).[12]  Plaintiffs went to Truck Enterprises Hagerstown ("TE")[13]

on May 23, 2007 and to FOH on September 4 and December 12, 2007 and on

January 7 and February 5, 2008 for the vibration/rumble noise. (*See id.* Exs. Q-T).

Upon Freightliner's suggestion, Plaintiffs ultimately delivered the vehicle to

its Gaffney, South Carolina facility for further diagnosis.  At that time,

Freightliner identified the problem as a broken wire underneath the engine cover

in the Cummins diesel engine. (Doc. 37 Ex. V).  Plaintiffs acknowledge that the

repair to the wire in the Cummins engine rectified the vibration/rumble noise,

which has not since returned. (Docs. 37, 44 ¶¶ 33, 34).

In addition to the vibration/rumble noise, Plaintiffs aver that they

complained to Freightliner about the following conditions at various times

throughout their ownership of the vehicle: (I) dimmed lights (Doc. 37, Ex. O); (ii)

fuel sending unit failed to register (*Id.* Ex. P); (iii) check engine light

malfunctioning (*Id.* Ex. R); (iv) broken heat shield (*Id.*); (v) strong odor of burnt

oil (*Id.*); (vi) a broken clamp for the air intake (*Id.*); (vii) front end clunking noise

---

[12] Plaintiffs aver that during this 22 day repair visit, FOH misdiagnosed the problem as an incorrectly routed air tube, hose, and exhaust. (*Id.* Ex. P).  Plaintiffs also complained of the defective fuel gauge at this time.  Cummins' representatives were in contact with FOH while the vehicle was in its temporary custody. Paul E. Robinson Dep. 177:18-178:4.

[13] TE is an authorized Allison dealership. (Docs.37, 44 ¶ 30). Plaintiffs claim that they delivered the vehicle to TE because FOH informed them on two occasions that the vibration and rumble noise were caused by the vehicle's Allison transmission. (*Id.* Ex. Q).

(*Id.* Ex. S); (viii) broken protectant shield (*Id.* Ex. T); (ix) a harmonic driveline noise;[14] and (x) a failed turbo charger.

In our September 28, 2009 Memorandum and Order, we denied Freightliner's summary judgment motion with respect to Plaintiffs' express warranty, MMWA, and UTPCPL claims insofar as they were based upon the burnt oil odor and front end clunking noise. In so doing, we opined that a reasonable jury could infer that Freightliner had breached express warranties related to these alleged defects. The instant Motion seeks reconsideration of these determinations.

## IV. DISCUSSION:

### A. Burnt Oil Odor

Freightliner asserts that we committed an error of law in denying it summary judgment on the burnt oil issue because that problem has been subsequently remedied and therefore supposedly cannot form the basis of a breach of warranty claim. We again disagree. As noted in our previous Order, while a repair-or-replace provision is generally enforceable, it is rendered inoperable if it fails of its essential purpose. *See Wollums v. Nat'l RV*, 530 F. Supp. 2d 691, 700

---

[14] Freightliner contends that the only Freightliner/chassis issues which are the subject of the complaint are the heat shield, clunking noise, protective shield, and the burning odor. They assert that all of these items were corrected and Plaintiffs never needed subsequent service to remedy any of these issues. Robinson Dep. 174-77, 197-98. At his deposition, conducted on September 19 and October 31, 2008, Paul Robinson confirmed that the only items in need of repair were the leveling jacks and slide out rooms. (*See* Robinson Dep. 212, 214-16, 249).

(M.D. Pa. 2008) (Conner, J.). Such a provision "fails of its essential purpose" where it deprives either party of the substantial value of the bargain. *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 890 (E.D. Pa. 1996). To this end, courts have held that repair or replacement of a defective component must be made within a reasonable time after the discovery of the defect because "a delay in supplying the remedy can just as effectively deny the purchaser the product he expected as can the total inability to repair." *Wollums*, 530 F. Supp. at 700. Therefore, even though the burnt oil smell may have been ultimately remedied, a breach of warranty claim based upon that defect would be viable if the corrective remedy was not dispensed in a timely manner.[15]

As we noted in our September 28, 2009 Order, the burnt odor issue was addressed on two separate occasions, September 4, 2007 and September 27, 2007. Freightliner concedes this point; however, it argues that "two repair attempts, within a few weeks wherein plaintiffs had the use of the vehicle in the intervening time period, is not an unreasonable period of time as a matter of law." (Doc. 78, p. 16). It cites no authority for this proposition. To the contrary, "[w]hether a limited warranty has failed its essential purpose is a *question of fact for the*

---

[15] To the extent that Freightliner cites cases in support of the proposition that a remedied problem cannot form the basis of a breach of warranty claim, it appears that the sections cited actually stand for the proposition that repairs made in a *successful and timely manner* cannot support warranty claims, not that all corrected remedies preclude warranty claims.

*jury."Wolloums*, 530 F. Supp. 2d at 700 (quoting *Strivkler v. Peter-bilt Motors Co.*, 2005 WL 1266674 * 4 (E.D. Pa. 2005)) (emphasis added). Accordingly, since there is record evidence that at least one repair to the burnt oil odor was unsuccessful, we believe that it is for the jury to decide whether this constitutes a failure of the repair-or-replace provision's essential purpose. Consequently, we will deny the instant Motion to this extent.

## B.     Front-End Clunking Noise

Freightliner asserts that we committed an error of law in denying it summary judgment on the burnt oil issue because that problem was caused by rust, which is an owner maintenance problem and therefore not covered by the applicable warranty.[16] This assertion is based upon a December 12, 2007 repair visit in which it was noted that the brakes were making noise and vibrating. Upon inspection the repairman discovered rust. After removal, the brakes allegedly operated normally. However, as noted in our original Memorandum and Order, "[A]ccording to the Plaintiffs, the problem with the front end clunking persisted from the time it was originally brought to FOH's attention in December 2007 until at least the time of Paul Robinson's deposition in January 2009." (Doc. 73, p. 18)

---

[16] We do note that rust is in fact not covered by the applicable Freightliner warranty. (*See* Doc. 37-7).

(citing Robinson Dep. 1910:21-191:5). Accordingly, this casts sufficient doubt upon Freightliner's assertion that the brake rust caused the front-end clunking noise.[17] Since a genuine issue of material fact exists as to the genesis of the front-end clunking noise, we shall deny the instant Motion to this extent.[18] The question shall be properly left for a jury to decide.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1. Freightliner's Motion for Reconsideration (Doc. 78) is **DENIED** in its entirety.

/s/ John E. Jones III
John E. Jones III
United States District Judge

---

[17] Indeed, Paul Robinson stated that the front-end clunking noise was a problem at the time of his deposition, which occurred after two removals of brake rust, one in December 2007 and one in March 2008.

[18] At this time, we note that Freightliner contends that Plaintiffs have not provided expert testimony regarding the origin of the front-end clunking noise and therefore cannot establish that a Freightliner warranted components was the cause thereof. If, at trial, Freightliner elects to asserts that Plaintiffs have not carried their burden, it is free to make a motion for a judgment as a matter of law on this point. The fact that Freightliner reserves this argument does not change our analysis or conclusion herein.